Green, J.
delivered the opinion of the court.
The bill in this case alledges, that one Burris being indebted to the defendants in the sum of about $208, he executed to them his bonds, with Locke, the complainant’s intestate, as his surety. In 1827, the defendants took a deed of trust from Burris, for a tract of land, a negro, and all his personal property, to secure the payment of certain debts therein specified as due them, including the debts for which Locke was surety. Defendants permitted Burris to retain possession of, use, and waste the personal property mentioned in the deed of trust; and in 1833 having died intestate, suits were brought against the complainant, his administrator, and judgments obtained. The bill charges, that, "there is a sufficient portion of the property named in said deed of trust, how in the county, subject to the control of, and sale, by the said Settle, Whitley and Smith, and the said Thomas Smith, trustee, to pay, and satisfy said judgment and costs.”
The complainant prays, that the estate of Locke be released from liability, and the defendants be compelled to resort to their deed of trust to make their debt.
The Chancellor decreed in favor of the complainant, and enjoined the judgment against him, — from which the defendants prosecute this appeal.
We are unable to find any authority, upon which this decree, can be supported. The Chancellor seems to have placed his *172 decree upon the ground, that the defendants by taking tb© deed of trust, including all the property of Burris, — placed Locke, the surety, in a worse situation, than he would have been in, had the deed not been made. But this, we think, is a mistaken view of the subject.
The deed, does not stipulate for any delay to sue on the notes, nor is it a legal consequence that there should be any delay. So that the facts do not justify us to put the case upon the ground, of a stipulation for delay, upon a good consideration, without the knowledge, or assent of the surety, whereby he would be discharged. Nor can the mere fact,, that the deed was taken as an additional security for the debt, discharge the surety. It is true, that the surety on paying the money, would be entitled to be substituted to the rights of the creditor, and to have the benefit of the deed of trust. 1 Story’s Eq. § 502. But this very right of substitution, shows that the surety is not discharged; for if discharged, there would be no need of the substitution. So far from the fact, of a creditor taking a deed of trust, or mortgage, from the principal debtor as an additional security, being prejudicial to the surety,, it is for his benefit, — it is for Ms indemnity, as though he had taken it himself. Having paid the money, he can avail himself of it, as though it had been executed to him, as an indemnity for his suretiship. It is unreasonable, therefore,, that an act, no way injurious, hut highly beneficial to the surety, should operate to release him from his liability to the-creditor.
But it is said, that where a creditor takes collateral security, and by any act of his own, puts it out of his power to make an assignment of such security, to the surety, who may have paid the debt — such surety would be discharged. 1 Story’s Eq. § 502. This is certainly true, but the principle' does not apply to this case. It is true, that part of the property conveyed in the deed, was used, and disposed of, by Burris, and if the whole security had been lost, through the negligence or misconduct of the defendant, it would have formed a ground of relief under this head. But the bill, answers and proof, all concur in showing, that the land, which is still liable to this debt, is sufficient to satisfy it. Surely *173 then, if there remain of the security a sufficiency, ample to indemnify the surety, he has no right to complain that part of it has been wasted. Indemnity, is all he would have been entitled to, at any rate, and if he obtains that, (as he alledges in his bill, may be done,) his situation is as good, as though none of it had been wasted. There is, therefere, no equity against the judgments at law, in favor of the defendants and the decree must be reversed.
Note. The following is a translation of the texts of the Civil Law in the order which they occupy in Pothier’s Pandects, Book 46, Tit. 1, Sec. 5, part of Art. 1 and Art. 2, on the subject of the surety’s right of Substitution.
According to a very ancient rule of law, a surety or guarantor or other accessory to the obligation of another, could not be made liable, until the property of the principal had been exhausted. This rule has always prevailed in revenue causes, and in cases of the demands of Cities against their magistrates, but in private causes, it had been changed long before the time of Justinian, principally by the authority of Papinian, on account of the delay which the practice produced.
Coeval ..with the change was the usage of compelling the creditor to sell his claim upon the other debtors to the surety who offered to pay the whole demand. Hence it is stated in the Digest to have been decided by Julian, that if upon my guaranty you trust Titius, and you sue me thereupon, Titius will not be thereby discharged, nor I made liable but on condition that you make good to me your actions against him. Nor is the creditor held to transfer his action against the principal debtor only, but also all the accessories thereof; for example, his actions against the other sureties and his pledges. Hence, in the code, a decision of Dioclesian and Maximian is stated, that as a creditor may elect to proceed against the sureties of his debtor, he cannot compel them to payment without transferring to them, if demanded, his mortgages and pledges. In like manner Severus and Antonine, are reported to have decided, that though a creditor, who has taken a pledge and a surety for the same debt, may, if he like, compel the surety to pay; yet if he do, he must transfer the pledges to him, unless taken to secure the payment of more than one debt, — in which case, he is not obliged to transfer them until he is fully satisfied.
The treasury itself is not excepted from this rule. For although it could always have been compelled to exhaust the property of its debtor before resorting to the surety, yet, it is bound, like other creditors, to cede its actions. Hence» Paul, as quoted in the Pandects, says that if one who is bound for another’s debt to the treasury, be sued and pay it, he may justly demand all fiscal extents T distresses and remedies against the debtor’s goods, including the aid of the Official. AccordingIy,Valerian and Gallienus decided, as appears in the Code, that where fiscal remedies have been assigned and transferred, by competent authority, to a surety who has paid the demands of the treasury against its debtor, the assignee cannot be disquieted in the title of the property which he thereby acquires# by those creditors of the public debtor over whom the treasury had a priority.
*173 But as all the parties are before the court, and it appearing, that the amount of the judgments at law, against the complainant, was discharged, on the dissolution of the injunction in this cause, we are of opinion, that complainant may be substituted to the rights of the defendants, Settle, Whitley and Smith, and that the land in the deed of trust mentioned, be sold to satisfy the amount paid by complainant on account of Locke’s suretiship and the costs of this suit.
Judgment reversed.
We have said that a creditor, to whom a surety has paid his demand, is bound to assign to him his actions. The question arises — how can this be done? For it may be said, when the creditor has received his money from a surety, this, being a satisfaction of the debt, tolls his actions. Not so, says Paul, as cited in the code, for the money paid by the surety is not received by the creditor in discharge of the debt, but, in a manner, as the consideration of a sale of the debt to the surety. And the transaction neither extinguishes the debt nor tolls the actions, but both pass to the surety as a consideration of the payment. It is to be observed, nevertheless, that the same lawyer held, that a surety, to whom pledges given by co-sureties have been transferred, does not stand in the place of a purchaser of pledges become absolute and irredeemable, but in the place of him who first received them, and therefore may be made to account for inter-terest and profits.
A creditor is barred of his recovery against a surety, not only if he will not assign to him his remedies against the principal debtor and the co-sureties,— but also, if by his fault, it happen that he has it not in his power to assign them, lienee Papinlan is reported in the Pandects as holding, that if a creditor sue his principal debtor, and mismanage his suit, whereby it is lost, he cannot recover of the guarantor in an action upon the collateral undertaking, since by his own fault, it has happened that he cannot assign his actions. Bui according to a decision of Julian, reported also in the Pandects, if one of two sureties who are bound for twenty dollars, give or promise the creditor five in discharge of his liability, that will not discharge the other surety; and if the latter be sued for fifteen hecannotplead auy plea in bar of the action, and consequently not the plea, that the creditor cannot assign him his action against the co-surety#for the creditor has lost the power of making the assignment, not by his fault but by an act of bounty, which is not culpable. But if the creditor undertake to recover the remaining five dollars from the first surety, the plea of deceit will’ bar the action. Austen vs. Howard, 1 J. B. Moore, 68; 7 Taunt. 327; Theobold on Suretyship, 288; Collins vs. Prosser, 3 Dowling and Ryland, 112; same case, 1 Barnwell and Cresswell, 682; Theobold, § 151. Tbeobold, page 288, states that this point has not been decided in Fngland.
There is this peculiarity in the plea whereby the -cession of actions is demanded, that it may be pleaded after sentence, because it does not impugn or infringe, but only modify, the matter adjudged. Hence, in the Digest, Modest-inus is stated to have said, that if judgment for the whole debt be rendered against one guarantor, whenever he is sued upon that judgment, he may demand a transfer to himself of the creditor’s actions against all who guarantied the same thing.
But the cession of actions does not take effect by operation of law; but only if the surety when he pays, sees that they are ceded to him. Otherwise, he will be left to his own proper actions against his principal, — as to the action upon the guaranty, or for money paid, or work and labor done, &c. Upon this point, Gordian is reported in the Code to have decided, that an action on a guaranty being a personal action, that is, one in which the plaintiff alledges that the defendant is bound to give or do something for his benefit according to the nature of the case, if It be brought in the name of the surety against the principal debtor or his heirs, the President of the province will give that specific relief which he may find to be proper. For example, he will adjudge to the surety the specific pledges given by the principal, if the payment were made with a view to purchase those securities; and he will even decree a transfer of actions. Moreover, in order to secure the pledges, he will exert his extraordinary jurisdiction against those who may have them in possession.
It remains to be observed that the assignment of actions oug-ht to take effect at, and not after an unconditional payment. And to this purpose it is reported in the Pandects, that Modestinus held in a case of guardian and ward, that if the guardian’s surety made unconditional payment of all that was due, such payment would toll the actions, and a subsequent assignment of them would be ineffectual. But if before the payment, or when the surety is sued, he provide for the assignment, and then make payment, and the assignment follow, the actions are saved. For in this last case, the money paid is the price of the ceded actions rather than a satisfaction of the actual suit against the rurety.
What has been said as to the assignment of actions to which guarantors and sureties are entitled, is equally applicable to co-debtors. • •
But this benefit does not extend to one who without being himself obliged pays thedebtof a stranger. Thus, Gordian in the Codeis stated to have decided, that no action lies upon the ground of a failure to cede actions, against a creditor in favor of a stranger, who pays the debt for the purpose of having the debtor’s obligation transferred to him; and this though the payment be maeje in the name of the debtor, and though it extinguish the obligation. In The Bank of the U. S. vs. Winston's Executors, 2 Brockenborough, 252, a quereis made on this point by Marshall, C. J.